NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
Sixth Circuit Rule 28(g) limits citation to specific situations.
Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.
This notice is to be prominently displayed if this decision is reproduced.

## NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 02-4424

### UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

DENNIS PIERRE, et al.,
    Plaintiffs-Appellants,

v.

OFFICER PAUL NEUDIGATE, et al.,
    Defendants-Appellees.

On Appeal from the
United States District Court for the
Southern District of Ohio.

---

Before:     KENNEDY, MARTIN, AND ROGERS, Circuit Judges

---

**KENNEDY, J.** Plaintiffs Dennis and Kenya Pierre challenge the district court's order granting summary judgment to Defendants Cincinnati Police Officers Paul Neudigate, Ken Baker and Jeffrey L. Ray in this § 1983 action based on the search of Plaintiffs' apartment. Because we find that Defendants acted reasonably under the circumstances, we **AFFIRM**.

### BACKGROUND

The facts of this case are not in dispute. Plaintiffs rented apartment unit #3 at 29 Mulberry Street in Cincinnati, Ohio from Miles Nixon. Plaintiffs' apartment occupied a portion of the second and the third floors of the building. The building, additionally, contained three other apartment units. These other units were occupied by Mr. Loomis (next door to Plaintiffs) and Samuel Higgins who owned the two units downstairs on the ground level and at the basement level.

During October 1999, Defendants Ray and Baker received information from a confidential informant ("CI") that Shannon Higgins ("Higgins") had acquired a large amount of powder cocaine and crack cocaine from New York City. The CI informed Defendants Ray and Baker that he had personally traveled with Higgins to and from New York City to acquire the cocaine. Higgins, according to the CI, hid the cocaine at 29 Mulberry Street, in his second floor bedroom which he supposedly kept locked. The CI also indicated that 29 Mulberry Street was a single family residence owned by Higgins' father, Samuel Higgins. Defendants Ray and Baker had used information provided by this CI on at least five prior occasions and the information provided was reliable.

Defendants Ray and Baker conducted surveillance on 29 Mulberry Street somewhere between five and ten times during the month of October, 1999. During these surveillance sessions, they observed Higgins' vehicle parked at 29 Mulberry Street several times. The CI was present with Defendants Ray and Baker during several of these surveillance sessions.

Defendant Ray accessed the internet site of the Hamilton County Auditor's office to verify that 29 Mulberry Street was indeed a single family residence as the CI had indicated.[1] When Defendant Ray accessed the website and typed in "Higgins S," displayed on the website was the name "Samuel Higgins at 29 Mulberry Street." "Samuel Higgins at 29 Mulberry Street" was hyperlinked and Defendant Ray clicked on the link. Defendant Ray asserts, without any contradiction from Plaintiffs, that the page returned indicated that Samuel N. Higgins was the owner of 29 Mulberry Street. On October 27, 1999, Defendant Ray obtained a search warrant for

---

[1] Defendant Ray had used the Internet as an investigatory tool on a couple of previous occasions.

2

29 Mulberry Street. At the time he obtained the search warrant, Defendant Ray and other officers involved believed that 29 Mulberry Street was a single residence dwelling. Plaintiffs argue that it is evident that 29 Mulberry Street is a multi-dwelling residence. There is a door of the residence that fronts Mulberry Street, which leads into Higgins' apartment, and a door on the side that leads to the Plaintiffs' and Loomis' apartments on the second floor of the building. Defendants asserted, and Plaintiffs did not counter, that one cannot see the side door when looking at the dwelling from the front.

All officers serving the search warrant on 29 Mulberry Street entered the Higgins residence through the front door. After entering through the front door, the officers announced that it was the police and that they had a search warrant. Immediately thereafter, the officers conducted a protective sweep. During the protective sweep, Defendant Baker found no one on the street level and proceeded downstairs. While in the basement, Defendant Baker opened the first door he came to. This door led to the second floor and Plaintiffs' and Loomis' apartments. Although there was a wreath and a welcome mat at the door of Plaintiffs' apartment, neither the Plaintiffs' door nor Loomis' door was numbered. At this point, Defendant Baker yelled "police, search warrant" several times, tried to open the door, but found it to be locked. Undeterred, he kicked in the door. Two other police officers who were following Defendant Baker then entered Plaintiffs' apartment and began to conduct a protective sweep. Defendant Baker moved on so that he could enter the next door in the hallway.

Once Defendant Baker had entered through the next door, he realized that he was in a separate living quarter. He spoke with the resident of this apartment, Loomis. Defendant Neudigate was also present in Loomis' apartment to conduct the search. Once they realized that

3

29 Mulberry Street was not a single-family dwelling as they had originally thought, but rather a multi-family dwelling, Defendants Baker and Neudigate exited Loomis' apartment and entered Plaintiffs' apartment.

While Defendants Baker and Neudigate were still in Loomis' apartment, the other police officers had, with guns drawn, found Plaintiffs, handcuffed them, and sat them on a couch in Plaintiffs' second floor living area. Plaintiffs, immediately upon the entrance of the police officers, verbalized to the officers that they had the wrong people. Those same police officers also searched the couch Plaintiffs were sitting on to ensure that they did not have access to any weapons. The police officers did not search any part of Plaintiffs' apartment other than the couch.

Defendant Neudigate entered Plaintiffs' apartment shortly after the officers had sat Plaintiffs on the couch. Defendant Neudigate immediately told the officers to uncuff them. By that point, Plaintiffs had been handcuffed for approximately fifteen to twenty minutes. The officers apologized for the mistake and asked Plaintiffs questions in an attempt to determine how the mistake was made. The officers attempted to explain how they came to believe that the house was a single family residence. Plaintiffs were not physically injured during the incident but did, understandably, suffer some emotional distress. The only damage that occurred to Plaintiffs' apartment was to the door.

Plaintiffs filed suit on October 2, 2001, claiming a violation of their rights under the Fourth and Fourteenth Amendments. Specifically, Plaintiffs claim that their rights were violated by the search of their apartment in violation of 42 U.S.C. § 1983. On August 15, 2002, Defendants filed their motion for summary judgment. On November, 5, 2002, the district court

4

granted this motion. The current appeal followed.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*. *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996). In deciding a summary judgment motion, this court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). We must, however, view the evidence and draw all "justifiable inferences" in the light most favorable to the non-movant. *Id.* Summary judgment is appropriate where "there is no genuine issue as to any material fact and...the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment..." *Anderson*, 477 U.S. at 247-48 (emphasis in original). Mixed questions of law and fact are reviewed *de novo*. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (*en banc*).

## ANALYSIS

The district court found that since the facts of this case are undisputed, "there are no questions of fact for jury deliberation, but rather questions of law as to the reasonableness of the police actions in obtaining the warrant, executing the search and temporarily detaining Plaintiffs." *Pierre v. Neudigate*, No. C-1-01-67, slip op. at 12 (S.D. Ohio Nov. 5, 2002), J.A. at 26. We agree. There is certainly no dispute as to what Defendants did and/or saw. The only dispute in this case is whether what they did was sufficient and whether it was reasonable. In this regard, the Supreme Court's decision in *Maryland v. Garrison*, 480 U.S. 79 (1987), is most instructive. The *Garrison* Court had before it a situation where the police conducted a search

5

pursuant to a warrant for the person of Lawrence McWebb and "the premises known as 2036 Park Avenue third floor apartment." The police in that case believed that there was only one apartment on the premises described in the warrant. However, there were two apartments on the premises described in the warrant and before the officers executing the warrant realized that they were in a "wrong" apartment occupied by defendant Garrison, they had discovered the contraband that provided the basis for Garrison's conviction. The *Garrison* Court explicitly stated that the issues of the validity of the warrant and of the manner in which it was executed were analytically distinct. *Id.* at 84. Accordingly, we also treat these questions separately.

With respect to the validity of the warrant, the *Garrison* Court stated:

> In this case there is no claim that the "persons or things to be seized" were inadequately described or that there was no probable cause to believe that those things might be found in "the place to be searched" as it was described in the warrant. With the benefit of hindsight, however, we now know that the description of that place was broader than appropriate because it was based on the mistaken belief that there was only one apartment on the third floor of the building at 2036 Park Avenue. The question is whether that factual mistake invalidated a warrant that undoubtedly would have been valid if it had reflected a completely accurate understanding of the building's floor plan.
> Plainly, if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor of 2036 Park Avenue, they would have been obligated to exclude respondent's apartment from the scope of the requested warranted. But we must judge the constitutionality of their conduct in light of the information available to them at the time they acted. Those items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued. . . . The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and disclose, to the issuing Magistrate. On the basis of that information, we agree with the conclusion of all three Maryland courts that the warrant, insofar as it authorized a search that turned out to be ambiguous in scope, was valid when it issued.

*Id.* at 85-6. The Court acknowledged that the police officers arguably could have ascertained that there was more than one apartment on the third floor of this building. *Id.* at 86 n. 10.

6

Nevertheless, it concluded that the steps taken by the officers in that case were reasonable and that the warrant was valid. Those steps were: (1) the officer going to the site and finding that it matched the description given by the informant; (2) the officer checking with the Baltimore Gas and Electric Company and finding that the premises on the third floor were in the name of McWebb and that no one else was listed as living there; and (3) the officer checking with the Baltimore Police Department and finding that the police records of McWebb matched the address and physical description given by the informant.

The district court in this case found that the officers took reasonable steps in ascertaining that the 29 Mulberry Street residence was a single-family dwelling. Those steps included (1) receiving information from a reliable informant; (2) checking with the State Auditor's website; and (3) physically observing the residence several times without learning that it was a multi-family dwelling. The residence had been built as a single-family dwelling. Plaintiffs' only contention is that Defendants should have done more. We agree with the district court that the steps taken by Defendants in this case compare favorably to the actions taken in *Garrison* and, accordingly, find that the warrant in this case was valid.

The next question that we must address is whether the district court properly held that Defendants reasonably executed the warrant. We have no difficulty in concluding that the district court was correct when it opined that it

> understands the need for police officers to conduct a safe and efficient protective sweep. . . . The officers believed at the time Plaintiffs were detained that they were in the apartment of a drug dealer, who presumably could be armed. For the safety of the officers and Plaintiffs, a temporary detention was necessary. Furthermore, the search of the couch is reasonable as the police officers wanted to ensure that no weapons or other items were available to the Plaintiffs as they sat on the couch. As soon as the Defendants were positive that 29 Mulberry Street

was in fact a multi-dwelling residence, they uncuffed the Plaintiffs and apologized for the mistake.

*Pierre v. Neudigate*, No. C-1-01-670, slip op. at 14.

At every stage, the police acted as should be expected. Until they were informed by Defendant Neudigate that there was more than one family in the building, the police officers were operating under the assumption, admittedly an incorrect one, that the 29 Mulberry Street residence was a single-family dwelling. Accordingly, it was not unreasonable for them to assume that Plaintiffs were a proper target of a search. Plaintiffs certainly suffered some discomfort and embarrassment as a result of the misunderstanding in this case. However, this misunderstanding was not unreasonable under the circumstances.

As their last argument, Plaintiffs insist that a different treatment that was afforded to their white neighbor Loomis is sufficient to present an issue of fact as to the reasonableness of the police officers' conduct in handcuffing Plaintiffs, who are black. We disagree. The police officers who entered Plaintiffs' apartment were not the same officers who entered Loomis' apartment. The reaction of the officers who entered Loomis' apartment, therefore, is not determinative as to the reasonableness of the conduct of the police officers who entered Plaintiffs' apartment. More than one course of action may be taken by the police and more than one course of action may be reasonable in certain cases. This is such a case.

## CONCLUSION

For the reasons stated above, we affirm the district court's order granting the motion for summary judgment to Defendants.

8

BOYCE F. MARTIN, JR., Circuit Judge, dissenting. Dennis and Kenya Pierre ask this Court to restore their dignity, which was violated when Cincinnati police officers invaded their home and detained them, face down on the floor and then on their couch, for nearly twenty minutes for no valid reason. In response, the majority swiftly concludes that there are no disputed facts, and as a matter of law under the Supreme Court's decision in *Maryland v. Garrison*, 480 U.S. 79 (1987), the Pierres' claims were properly dismissed. Yet, in my view, there are disputed facts, and the majority's consideration of *Garrison* is premature.

While the Cincinnati police officers were raiding their apartment building, Ms. Pierre, a patent attorney, was working in the second bedroom and Mr. Pierre, a State Farm insurance agent, was lying unclothed on a bed in the first bedroom watching television. When the police burst through their door, the Pierres, startled and upset, immediately explained to them that they had entered the wrong apartment. Nevertheless, the officers ordered both of them to lie down on the floor and, after handcuffing them, placed them on a couch where, the Pierres allege, they sat while the officers conducted a protective sweep of their apartment. The officers have stated that they only searched the couch on which the Pierres were sitting. This discrepancy is a genuine issue of material fact.

According to the Pierres, the building at 29 Mulberry Street is distinctly separated into four apartment units, each clearly marked. The building has two entrances: the entrance to Higgins' apartment is in the front of the house and the entrance to the other apartments is on the side. Prominent mailboxes near the front entrance indicate that several people live in different units in the building. The door to the Pierres' apartment has a welcome wreath and other artifacts that mark it as a separate unit. The officers state that the different apartment units and

9

No. 02-4424
*Pierre v. Neudigate*
Page 10

the building's separate entrances are not clearly identified, and the mailboxes are not prominent. These discrepancies are genuine issues of material fact.

Also, the Pierres contend that the first page of the web site from which the officers presumed that Shannon Higgins lived in the entire building plainly shows that 29 Mulberry is a multi-family dwelling. The officers state that the website shows only that Higgins owns the building. Undeniably, this discrepancy is a genuine issue of material fact.

In lieu of exploring these discrepancies, the majority simply ignores them. In recognition of the right of all citizens to feel secure in their homes, we owe the Pierres more than a cursory glance at the factual record. Upon meaningful review, it is clear that this case contains genuine issues of material fact, and summary judgment is unwarranted. Thus, I dissent.